# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK SHARP & DOHME CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.  14-874-SLR |
| v. | ) | |
| | ) | |
| TEVA PHARMACEUTICALS USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## TEVA PHARMACEUTICALS USA, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEW JERSEY

OF COUNSEL:

David M. Hashmall
Frederick H. Rein
Joseph B. Crystal
Michael B. Cottler
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Tel:  (212) 813-8800


Dated:  July 31, 2014
1161077/ 41722

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Teva Pharmaceuticals USA, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

I.   NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

II.  SUMMARY OF THE ARGUMENT ............................................................. 2

III. STATEMENT OF FACTS ............................................................................ 3

     A.  New Jersey Is Home to Merck .............................................................. 3

     B.  Merck Unsuccessfully Sued Apotex in New Jersey for
        Infringement of the '353 Patent Based on its Anhydrous
        Mometasone Furoate Product .............................................................. 4

     C.  Merck Is Now Suing Teva in Delaware, and not New Jersey, for
        Infringement of the '353 Patent Based on its Anhydrous
        Mometasone Furoate Product .............................................................. 5

     D.  Teva's ANDA Product Has No Ties to Delaware ................................. 5

IV.  ARGUMENT ............................................................................................... 5

     A.  Applicable Legal Standards ................................................................. 6

     B.  Merck Could Have Brought this Action Against Teva in the
        District of New Jersey .......................................................................... 7

     C.  Transferring this Case to the District of New Jersey Will Further
        the Important Public Interest in Judicial Economy Because Judge
        Sheridan Has Already Considered the '353 Patent and the Issue of
        Infringement ........................................................................................ 8

     D.  Merck's Choice of Delaware Is Not Controlling Because New
        Jersey Is  Merck's Home, and Its Decision to Sue in This District
        Amounts to Classic Forum Shopping that Section 1404(a) Was
        Designed to Prevent ............................................................................ 10

V.   CONCLUSION ........................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Servs. Div. Welfare Fund v. Merck & Co., Inc.*,
No. 3:12-cv-766-JPG-SCW, 2012 WL 5471233 (S.D. Ill. Nov. 9, 2012) ..............................8

*Bloomstein v. Lucasfilms Ltd.*,
No. 1:02-cv-00770, 2002 WL 977439 (N.D. Ill. May 10, 2002)...........................................9

*Burstein v. Applied Extrusion Techs., Inc.*,
829 F. Supp. 106 (D. Del. 1992) .........................................................................................10

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
C.A. No. 11-1050-GMS, 2013 WL 828220 (D. Del. Mar. 6, 2013)....................................10

*In re Link_A_Media Devices Corp.*,
662 F.3d 1221 (Fed. Cir. 2011)...........................................................................................10

*In re Vistaprint*,
628 F.3d 1340 (Fed. Cir. 2010)..............................................................................................8

*Jumara v. State Farm Ins. Co.*
55 F.3d 873 (3d Cir. 1995) ...................................................................................... 6, 7, 10, 11

*Kirschner Bros. Oil, Inc. v. Pannill*,
697 F. Supp. 804 (D. Del. 1986) .........................................................................................10

*Medicis Pharm. Corp. v. Nycomed U.S. Inc.*,
C.A. No. 10-1099-SLR, 2011 WL 2457598 (D. Del. June 16, 2011)............................7, 8, 9

*Merck Sharp & Dohme Corp. v. Apotex Inc.*,
517 F. App'x 939 (Fed. Cir. 2013)....................................................................................1, 5

*Polyform A.G.P. Inc. v. Airlite Plastics Co.*,
No. 4:10-CV-43-CDL, 2010 WL 4068603 (M.D. Ga. Oct. 15, 2010)...................................9

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
119 F.3d 1559 (Fed. Cir. 1997).............................................................................................8

*Ross v. Institutional Longevity Assets LLC*,
C.A. No. 12-102-LPS-CJB, 2013 WL 5299171 (D. Del. Sept. 20, 2013) ........................6, 11

*Sapp v. FirstFitness Int'l, Inc.*,
No. 5:09-CV-048, 2009 WL 2997624 (M.D. Ga. Sept. 16, 2009) .........................................9

*Schering Corp. v. Apotex Inc.*,
No. 09-6373-PGS, 2012 WL 2263292 (D.N.J. June 15, 2012).....................................passim

*Wacoh Co. v. Kionix Inc.*,
   845 F. Supp. 2d 597 (D. Del. 2012) ............................................................................... 6, 11

*Weinberger v. Tucker*,
   391 F. Supp. 2d 241 (D.D.C. 2005) .................................................................................... 9

**STATUTES**

28 U.S.C. § 1400(b) ................................................................................................................. 7

28 U.S.C. § 1404(a) .......................................................................................................... passim

Pursuant to 28 U.S.C. § 1404(a), defendant Teva Pharmaceuticals USA, Inc. ("Teva") respectfully moves to transfer this case to the U.S. District Court for the District of New Jersey, Trenton Division, where Judge Peter Sheridan had previously held, after trial, that U.S. Patent No. 6,127,353 ("the '353 patent"; D.I. 1-1) was not infringed by another company's generic product that, like Teva's generic product, contained **anhydrous** mometasone furoate instead of the claimed mometasone furoate **monohydrate**.[1] Transferring this case to New Jersey would further the important public interest in judicial economy and deter parties from forum shopping as a means of avoiding judges who rendered unfavorable rulings.

## I. NATURE AND STAGE OF THE PROCEEDINGS

On July 3, 2014, Merck sued Teva in this District asserting infringement of the '353 patent. Tellingly, Merck's complaint is silent as to the fact that it had previously – and unsuccessfully – asserted the '353 patent in New Jersey against Apotex Inc. ("Apotex").[2] In the *Apotex* case, Judge Sheridan held that Merck had failed to establish that Apotex's anhydrous mometasone furoate product infringed the asserted claims of the '353 patent directed to mometasone furoate monohydrate.[3]

---

[1] In an appeal from the earlier litigation, plaintiff Merck Sharp & Dohme Corp. ("Merck") asserted that there are only two known forms of mometasone furoate: anhydrous and monohydrate. *See* Non-Confidential Brief of Plaintiff-Appellant, Merck Sharp & Dohme Corp. v. Apotex Inc., Nos. 2012-1516, 2012-1543, at 13-16, attached as Exhibit A to the accompanying Declaration of Joshua A. Whitehill in Support of Teva's Motion to Transfer ("Whitehill Decl.").

[2] Merck subsequently acquired Schering Corporation which was the plaintiff in *Schering Corp. v. Apotex Inc.*, No. 09-6373-PGS (D.N.J.) (hereinafter the "*Apotex* case"). For the sake of simplicity, the plaintiff in both actions will be referred to as Merck.

[3] Judge Sheridan's decision, reported at 2012 WL 2263292 (D.N.J. June 15, 2012), is attached as Exhibit B to the Whitehill Declaration. The judgment of non-infringement in the *Apotex* case was subsequently affirmed by the U.S. Court of Appeals for the Federal Circuit. *Merck Sharp & Dohme Corp. v. Apotex Inc.*, 517 F. App'x 939 (Fed. Cir. 2013).

After informing Merck of Teva's intention to move to transfer this case to New Jersey, counsel for the parties held a meet-and-confer on July 28, 2014.  At this meet-and-confer, Teva's counsel explained the judicial economy associated with having Judge Sheridan decide this case because Teva's product, like Apotex's product, contains anhydrous mometasone furoate.[4] Notwithstanding the aforementioned judicial efficiency, Merck – a New Jersey corporation that has repeatedly sued Teva for infringement in New Jersey – refused to consent to transfer this case to the District of New Jersey.

## II.    SUMMARY OF THE ARGUMENT

The facts and circumstances of this case strongly favor transfer to the District of New Jersey, Trenton Division, pursuant to 28 U.S.C. § 1404(a).

(1) There is no dispute that Merck could have brought this action against Teva in the District of New Jersey based on Teva's presence in that jurisdiction, as it has done in many other litigations.

(2) Merck had previously chosen the District of New Jersey as the forum for the *Apotex* case relating to the same patent and involving a generic product, like Teva's, that contained anhydrous mometasone furoate.  Judge Sheridan already heard and considered testing and testimony regarding whether anhydrous mometasone furoate contains any monohydrate or converts to monohydrate over the shelf-life of the product. Thus, it would be a drain on this Court's time and resources to familiarize itself with the highly technical issues that will arise in this case, when another judge is already thoroughly educated regarding those issues.

---

[4] Merck's counsel is able to confirm this point by reviewing Teva's Abbreviated New Drug Application ("ANDA"), which was produced in accordance with D. Del. LR 26.2 on July 25, 2014.

(3) Merck's choice of venue is entitled to less weight because it did not select its home forum of New Jersey.  Indeed, it appears that Merck selected this District simply to avoid an unfavorable ruling in view of the *Apotex* case in New Jersey.  This is precisely the classic type of forum shopping that Section 1404(a) was designed to prevent.

Under these circumstances, transfer to the District of New Jersey, Trenton Division, is clearly appropriate.

## III.   STATEMENT OF FACTS

### A.   New Jersey Is Home to Merck

Merck is a New Jersey corporation with its principal place of business in Whitehouse Station, a town in northern New Jersey.  D.I. 1, ¶ 2.  Merck has been headquartered in Whitehouse Station since 1992, and plans to move its headquarters next year to nearby Kenilworth, New Jersey.  *See* Whitehill Decl. Ex. C (Merck Press Release).  Upon information and belief, Merck employs approximately 10,000 personnel at its New Jersey facilities.  *See, e.g.,* Ex. D (*Star Ledger* article).  Moreover, Schering (the original assignee of the '353 patent) was also previously domiciled in New Jersey.[5]

---

[5] By way of background, the '353 patent was originally assigned to Schering, which was a New Jersey corporation with its principal place of business in Kenilworth, New Jersey.  *See* Ex. E (*Apotex* case, D.I. 1, Complaint) at ¶ 19; Ex. F (*Apotex* case, D.I. 458, Pretrial Order), at 5.  In 2009, Merck and Schering merged, and Schering subsequently changed its name to Merck.  *See* Whitehill Decl. Ex. G (*Apotex* case, D.I. 446, Notice of Party Name Change).

**B.    Merck Unsuccessfully Sued Apotex in New Jersey for Infringement of the '353 Patent Based on its Anhydrous Mometasone Furoate Product**

In 2009, Apotex filed an ANDA to sell a product containing anhydrous mometasone furoate. *See Apotex*, 2012 WL 2263292, at *1. Later that year, Merck sued Apotex[6] in the District of New Jersey, alleging infringement of the '353 patent. Whitehill Decl. Ex. E (*Apotex* case, D.I. 1, Complaint). The *Apotex* case was assigned to Judge Sheridan in the Trenton Division.

In April 2012, Judge Sheridan held a seven-day bench trial concerning the issues of infringement and invalidity. At trial, testimony was heard from over ten witnesses, five of whom provided expert opinions regarding the issue of infringement. *See Apotex*, 2012 WL 2263292, at *3-10. Merck argued that the anhydrous mometasone furoate in Apotex's product converted to mometasone furoate monohydrate sometime between the date of manufacture and its expiration date two years later. *Id.* at *2. Merck argued that its infringement contentions were supported by, *inter alia*, X-ray powder diffraction and Raman spectroscopy testing on mometasone furoate that one of its experts isolated from Apotex's product. *Id.* at *3-10. In his decision, Judge Sheridan ruled that Merck's test results did not support the argument that anhydrous mometasone furoate converted to mometasone furoate monohydrate in Apotex's product over time. *Id.* The Court therefore concluded that Merck failed to present credible evidence sufficient to meet its burden of proof by a preponderance of the evidence standard.[7] *Id.*

---

[6] Merck sued two Apotex entities: (1) Apotex Inc., a Canadian company with principal place of business in Toronto, Ontario, and (2) Apotex Corp., a Delaware corporation with a place of business in Weston, Florida. Whitehill Decl. Ex. E (*Apotex* case, D.I. 1, Complaint); Ex. F (*Apotex* case, D.I. 458, Pretrial Order), at 5.

[7] The Court also found that Apotex failed to present credible evidence sufficient to meet its burden of proving that the asserted claims of the '353 patent were anticipated and/or obvious. *Apotex*, 2012 WL 2263292, at *14-23.

at *10.  Merck appealed, but in June 2013, the Federal Circuit affirmed the District Court's

judgment of non-infringement without opinion.  *Merck*, 517 F. App'x 939.

### C. Merck Is Now Suing Teva in Delaware, and not New Jersey, for Infringement of the '353 Patent Based on its Anhydrous Mometasone Furoate Product

In 2013, Teva filed an ANDA to sell a product that, like Apotex's, contains anhydrous

mometasone furoate.  After receiving an ANDA number from the FDA, Teva gave Merck notice

that while the '353 patent is directed to mometasone furoate monohydrate, Teva's product did

not contain any such monohydrate and thus did not infringe that patent.  Nevertheless, and

despite having previously sued Apotex in the District of New Jersey, Merck brought suit against

Teva in this District, alleging direct infringement in Count I and contributory infringement in

Count II.[8]

### D. Teva's ANDA Product Has No Ties to Delaware

Teva's ANDA product has no ties to Delaware.  Rather, the manufacturing, formulating

and testing of Teva's ANDA product occurs outside of the United States.  Wise Decl. at ¶ 9.[9]

Moreover, Teva's regulatory work relating to this ANDA product occurs outside of Delaware.

*Id*. at ¶ 10.

## IV.   ARGUMENT

As discussed below, pursuant to 28 U.S.C. § 1404(a), this case should be transferred to

the District of New Jersey because New Jersey is home to Merck and Judge Sheridan has already

handled a trial regarding whether a product, like Teva's, containing anhydrous mometasone

---

[8] Teva is concurrently moving to dismiss Count II pursuant to Fed. R. Civ. P. 12(b)(6).  This Court, however, need not rule on the motion to dismiss if it grants Teva's motion to transfer this case to the District of New Jersey.

[9] "Wise Decl." refers to the accompanying Declaration of Jonathan R. Wise in Support of Teva Pharmaceuticals USA, Inc.'s Motion to Transfer Venue to the District of New Jersey.

furoate, infringes the '353 patent.  Merck's decision to file suit in this District is an apparent

attempt to avoid the same adverse ruling of non-infringement that it suffered in New Jersey and,

therefore, should not be afforded the usual deference given to a plaintiff's choice of forum.

### A.      Applicable Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  Section 1404(a) was "designed to prevent:  (1) forum shopping by

plaintiffs who seek to avoid prior rulings or governing precedents in other jurisdictions, (2) the

waste of time, energy, and money, and (3) to protect litigants, witnesses and the public against

unnecessary inconvenience and expense."  *Ross v. Institutional Longevity Assets LLC*, No. 12-

102-LPS-CJB, 2013 WL 5299171, at *4 (D. Del. Sept. 20, 2013) (internal quotation marks

omitted) (quoting *MP Vista, Inc. v. Motiva Enters. LLC*, C.A. No. 07-099-GMS, 2008 WL

5411104, at *2 (D. Del. Dec. 29, 2008)), *adopted and ordered*, C.A. No. 12-102-LPS-CJB, 2013

WL 5613998, at *1 (D. Del. Oct. 11, 2013).  The District Court has broad discretion to determine

whether convenience and fairness considerations weigh in favor of transfer.  *Jumara v. State*

*Farm Ins. Co.* 55 F.3d 873, 883 (3d Cir. 1995).  The movant bears the burden of showing that

transfer is appropriate.  *Id.* at 879.

Courts use a two-step inquiry to decide motions under Section 1404(a).  As a threshold

matter, the court must first determine whether the case could have been brought in the proposed

transferee forum.  *See Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 600-01 (D. Del. 2012).  If

that requirement is met, the court must then determine whether transfer would best serve the

convenience of the parties and witnesses as well as the interests of justice.  *Id.*  For this second

inquiry, courts in the Third Circuit consider the *Jumara* factors, a non-exhaustive list of private

and public interests that may be used to evaluate the propriety of transfer.[10]  *See, e.g.*, *Medicis Pharm. Corp. v. Nycomed U.S. Inc.*, C.A. No. 10-1099-SLR, 2011 WL 2457598, at *2-3 (D. Del. June 16, 2011) (granting transfer upon consideration of *Jumara* factors).

### B.     Merck Could Have Brought this Action Against Teva in the District of New Jersey

Section 1404(a)'s threshold requirement as to whether Merck could have sued Teva in the District of New Jersey is satisfied here because under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  Teva is licensed to conduct business in New Jersey, is registered as a drug wholesaler and manufacturer with the New Jersey Department of Health and Senior Services, maintains facilities in New Jersey, and has a registered agent in New Jersey for the receipt of service of process.  Wise Decl. at ¶¶ 5-8.  Merck cannot reasonably dispute that it could have brought this action against Teva in the District of New Jersey.  Indeed, Merck has filed at least six complaints of patent infringement against Teva in the District of New Jersey since 2007 and asserted in those complaints that jurisdiction and venue were proper based on the facts that, *inter alia*, Teva has offices and manufacturing facilities in New Jersey, and is registered to do business

---

[10] The *Jumara* private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."  *Jumara*, 55 F.3d at 879-80 (citations omitted and numbering added).
The *Jumara* public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases."  *Id.* (citations omitted and numbering added).

in that state.  Whitehill Decl. Ex. H, at ¶¶ 2-13; Ex. I, at ¶¶ 2-13; Ex. J, at ¶¶ 2-13; Ex. K, at ¶¶ 3-16; Ex. L, at ¶¶ 6-21; Ex. M, at ¶¶ 4-9.

### C.    Transferring this Case to the District of New Jersey Will Further the Important Public Interest in Judicial Economy Because Judge Sheridan Has Already Considered the '353 Patent and the Issue of Infringement

The fact that Judge Sheridan already tried and decided the related *Apotex* case weighs strongly in favor of transferring this case to New Jersey because transfer will promote the important public interest in judicial economy.  *See In re Vistaprint*, 628 F.3d 1340, 1344-45 (Fed. Cir. 2010) (holding that it was not improper for a district court to have given substantial weight to the facts that the forum district recently tried a related case and was handling another related case); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("[I]n a case such as this in which several highly technical factual issues are presented and the other relevant factors are equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues.").  Having a single court handle related proceedings is beneficial from the standpoint of judicial resources because it is less efficient to require a new district judge to start from scratch and transfer avoids the danger of inconsistent results and duplication of efforts.  *See Vistaprint*, 628 F.3d at 1344-45; *Medicis*, 2011 WL 2457598, at *3; *Allied Servs. Div. Welfare Fund v. Merck & Co., Inc.*, No. 3:12-cv-766-JPG-SCW, 2012 WL 5471233, at *3 (S.D. Ill. Nov. 9, 2012) ("[I]t would be inefficient for this Court to go over ground the District of New Jersey has already plowed.").

In both this case and the *Apotex* case, Merck has asserted that a product containing **anhydrous** mometasone furoate infringes the '353 patent, even though that patent is directed to mometasone furoate **monohydrate**.  Thus, the court that tries this case will consequently be presented with questions of fact and law that were already considered in the *Apotex* case, such as whether anhydrous mometasone furoate in a generic product converts over time to mometasone

furoate monohydrate. *See Apotex*, 2012 WL 2263292, at \*3-10.  Accordingly, the case may

raise technical issues that will require considerable time and attention from this Court should

Teva's motion to transfer be denied.  To avoid duplicating work that Judge Sheridan already

undertook in the *Apotex* case, it is in the public interest for this case to be transferred to the

District of New Jersey where he sits.  *See Medicis*, 2011 WL 2457598, at \*3 (transferring ANDA

case that shared "common questions of law and fact" with actions in the transferee district

because transfer was "in the interest judicial economy . . . so that both courts may avoid

redundant efforts"). [11]  The mere fact that two years have passed since Judge Sheridan tried the

*Apotex* case does not negate the public's interest in transferring this case.  *See, e.g.*, *Weinberger*,

391 F. Supp. 2d at 245 (granting motion to transfer to district that tried prior related case where

motion was filed two years after judgment was entered in prior case); *Bloomstein*, 2002 WL

977439, at \*2 (granting motion to transfer to district that tried prior related case where motion

was filed 3½ years after judgment was entered in prior case).

---

[11] In its answer, Teva contends that Merck's claims are barred, in whole or in part, by the
doctrine of collateral estoppel.  Because Judge Sheridan is familiar with the facts and issues from
the *Apotex* case, the New Jersey District Court is better situated for deciding whether, and how,
collateral estoppel applies against Merck here.  *See Polyform A.G.P. Inc. v. Airlite Plastics Co.*,
No. 4:10-CV-43-CDL, 2010 WL 4068603, at \*6 (M.D. Ga. Oct. 15, 2010) ("Judicial economy
and the interests of justice strongly favor[ed] transfer" because "it would be imprudent [for the
transferor forum to decide the issue of collateral estoppel] in light of the extensive familiarity
that the [transferee forum] ha[d] with these issues" in a prior related case); *Sapp v. FirstFitness
Int'l, Inc.*, No. 5:09-CV-048, 2009 WL 2997624, at \*3 (M.D. Ga. Sept. 16, 2009) ("The interests
of justice strongly support a transfer in cases, such as this one, where the transferee court
reviewed and decided the prior litigation between the parties . . ., especially [when the] case turns
on the preclusive effect of that court's judgment.") (internal quotation marks and citations
omitted)); *Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245 (D.D.C. 2005) ("In this case, the
interests of justice strongly support a transfer to the court that reviewed and decided the prior
litigation between the parties and their privies, especially because this case turns on the
preclusive effect of that court's judgment."); *Bloomstein v. Lucasfilms Ltd.*, No. 1:02-cv-00770,
2002 WL 977439, at \*2 (N.D. Ill. May 10, 2002) ("[T]he interests of judicial economy favor
transfer, as the prior case may bind this case on some issues under the doctrine of collateral
estoppel.").

**D.      Merck's Choice of Delaware Is Not Controlling Because New Jersey Is Merck's Home, and Its Decision to Sue in This District Amounts to Classic Forum Shopping that Section 1404(a) Was Designed to Prevent**

Although the Third Circuit ordinarily places significance on a plaintiff's original choice of forum in considering the parties' private interests, Merck's choice to bring this case in Delaware is not controlling because Merck is not based here and presumably chose this District simply to avoid the New Jersey District Court's prior unfavorable ruling relating to non-infringement in the *Apotex* case.

This District has repeatedly acknowledged that a plaintiff's choice is entitled to less weight when the plaintiff chooses a forum other than its home.  *See, e.g., ChriMar Sys., Inc. v. Cisco Sys., Inc.*, C.A. No. 11-1050-GMS, 2013 WL 828220, at *4 (D. Del. Mar. 6, 2013) ("[T]he plaintiff's selection is only given increased weight as an individual *Jumara* factor where the plaintiff has chosen his home turf or can point to other legitimate reasons for filing suit in Delaware."); *Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 110 (D. Del. 1992) ("When the plaintiff has chosen to bring suit in a district that is not his 'home turf' and which has no connection to any of the acts giving rise to the lawsuit[] . . . the quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer is concomitantly reduced.") (quotations and citations omitted); *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 806 (D. Del. 1986) ("This Court has defined 'home turf' as 'the forum closest to the plaintiff's home in which plaintiff could effect personal service over the principal defendant." (citation omitted)).

Aside from Delaware being Teva's state of incorporation,[12] there are no facts in this case that connect this dispute to Delaware.[13]  Merck is a ***New Jersey corporation*** with its

---

[12] The bare fact that Teva is incorporated in Delaware is entitled to little weight in the analysis relating to transfer.  *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011) ("Neither § 1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry.  It is certainly not a dispositive fact in the venue transfer analysis[.]"); *Wacoh*, 845 F.

10

headquarters in *New Jersey*. Far from having a legitimate reason for bringing suit here, Merck presumably chose the District of Delaware as opposed to the more convenient District of New Jersey simply to avoid the New Jersey District Court, which, in the *Apotex* case, already considered and found insufficient Merck's argument that a product containing anhydrous mometasone furoate converts to mometasone furoate monohydrate over the shelf-life of the product. *Apotex*, 2012 WL 2263292, at *3-10. This Court has previously found that Section 1404(a) was "designed to prevent" this kind of classic forum shopping – shopping for a venue to avoid an adverse outcome that a party previously suffered in another forum. *See Ross*, 2013 WL 5299171, at *4. Merck's desire to avoid another unfavorable outcome in New Jersey for its '353 patent should not act as a barrier to transferring this case in the interests of judicial economy.

## V.   CONCLUSION

For the reasons stated above, Teva respectfully requests that this Court transfer this action to the U.S. District Court for the District of New Jersey, Trenton Division. Merck could have sued Teva in the District of New Jersey, but did not do so. Transferring this case to New Jersey, however, would strongly promote the important public interest in judicial economy because Judge Sheridan is already familiar with the '353 patent, the issues relating to any alleged conversion of anhydrous mometasone furoate to mometasone furoate monohydrate, and the relevant technology. To the extent Merck's forum shopping is a private interest, it is an interest that is strongly outweighed by the interest in judicial economy. Under these circumstances, transfer of this case to the District of New Jersey is warranted.

---

Supp. 2d at 605 (transferring case out of District of Delaware where Delaware was not plaintiff's home turf and the case's only connection to Delaware was that defendants were incorporated in Delaware).

[13] Any *Jumara* private and public interests not specifically addressed herein are either neutral or inapplicable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David M. Hashmall
Frederick H. Rein
Joseph B. Crystal
Michael B. Cottler
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800


Dated: July 31, 2014
1161077/ 41722

By:   */s/ Richard L. Horwitz*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE 19801
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Defendant Teva Pharmaceuticals
USA, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Richard L. Horwitz, hereby certify that on July 31, 2014, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on July 31, 2014, the attached document was electronically mailed to the following person(s)

Jack Blumenfeld (#1014)
Morris, Nichols, Arsht & Tunnel LLP
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899
jblumenfeld@mnat.com

Nicolas Barzoukas
Joshua Davis
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4995
nic.barzoukas@bakerbotts.com
joshua.davis@bakerbotts.com

By:  */s/ Richard L. Horwitz*
Richard L. Horwitz
David E. Moore
Bindu A. Palapura
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

1159598 / 41722