IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MERCK SHARP & DOHME CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 14-874-SLR/SRF |
| ) | |
| TEVA PHARMACEUTICALS USA, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| MERCK SHARP & DOHME CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 15-250-SLR/SRF |
| ) | |
| AMNEAL PHARMACEUTICALS LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

At Wilmington this 3rd day of September, 2015, having reviewed the motions to intervene for the limited purpose of disqualifying an expert, which motions were filed by third-party Apotex, Inc. ("Apotex"), and the papers submitted in connection therewith;

IT IS ORDERED that said motions (D.I. 92, Civ. No. 14-874; D.I. 24, Civ. No. 15-520)[1] are granted, for the reasons that follow:

1. **Background.** In February 2010, Apotex engaged Dr. Jeremy Karl Cockcroft

---

[1]All docket item references henceforth will be to Civ. No. 14-874.

to work on patent infringement litigation "relating to the drug product mometasone furoate nasal spray (Nasonex®)." (D.I. 94, ex. 1)) In the related engagement letter, Dr. Cockcroft agreed "to maintain as confidential all documents and information supplied to [him], as well as all conclusions and communications regarding [his] services." (*Id.*) Dr. Cockcroft also agreed "not to provide consulting services relating to mometasone to other individuals or entities, including but not limited to Schering [Corporation]." (*Id.*)

2. In December 2009, Merck Sharp & Dohme Corporation ("Merck")[2] filed a complaint in the United States District Court for the District of New Jersey against Apotex alleging infringement of U.S. Patent No. 6,127,353 ("the '353 patent") ("*New Jersey I*"). (*Id.*, exs. 2-3) In May 2010, the court entered a discovery confidentiality order, which order includes definitions of "confidential information" and "highly confidential information," and limits the disclosure of such information to those identified in paragraphs 5 and 6. (*Id.*, ex. 4) Dr. Cockcroft agreed to be bound by the order and was a testifying expert witness for Apotex in *New Jersey I*. (*Id.*, exs. 5, 7C) In June 2012, the court in *New Jersey I* concluded that Merck failed to prove infringement of the '353 patent and dismissed Merck's claims. (*Id.*, ex. 7A) In June 2013, the Federal Circuit affirmed the decision.

3. Merck instituted Civ. No. 14-874 against defendant Teva Pharmaceuticals USA, Inc. ("Teva") in July 2014, asserting infringement of the '353 patent. Merck instituted Civ. No. 15-250 against defendant Amneal Pharmaceuticals LLC ("Amneal")

---

[2]Schering was acquired by Merck in 2009.

2

in March 2015, asserting infringement of the '353 patent. Also in March 2015, Merck instituted a second lawsuit against Apotex in the District of New Jersey ("*New Jersey II*"), once again asserting infringement of the '353 patent. (*Id.* ex. 13)

4. Despite the knowledge of both Merck and Dr. Cockcroft that he had rendered expert assistance to Apotex in prior litigation involving the '353 patent, Merck engaged the services of Dr. Cockcroft in the above captioned litigation, again in connection with Merck's patent rights that cover Nasonex® nasal spray. In this regard, Dr. Cockcroft failed to give notice to Apotex of his engagement by adverse party Merck because he believed that his engagement by Apotex "ended when that case ended," and that the agreement did not limit his "ability to act as a freelance consultant on a permanent basis."[3] (D.I. 112)

5. **Intervention.** Federal Rule of Civil Procedure 24(a) provides that, on timely motion, a non-party is permitted to intervene who:

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

*See also In re Sealed Case*, 237 F.3d 657, 663 (D.C.Cir. 2001); *Mt. Top Condo Ass'n v Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995). Courts construe Rule 24 liberally in favor of intervention. *See N.L.R.B. v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992).

---

[3]According to Apotex, because its engagement letter with Dr. Cockcroft was exclusive only with respect to mometasone, the terms of the engagement were not unduly burdensome because it would end, at the latest, with the expiration of the '353 patent, that is, October 3, 2017. (D.I. 3)

3

6. Courts have found that the threat of disclosure of confidential or privileged information constitutes an interest that may be affected and impaired. *See, e.g., United States v. AT&T*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) ("Without the right to intervene in discovery proceedings, a third party with a claim of privilege in otherwise discoverable materials could suffer 'the obvious injustice of having his claim erased or impaired by the court's adjudication without ever being heard.'") (citation omitted). Given that the parties to the above captioned litigation are competitors of Apotex, Apotex's interest in maintaining the confidentiality of its protected information is not adequately represented by such parties. The motion to intervene was filed timely, after unsuccessful attempts by Apotex to resolve this matter by agreement. Apotex's motion to intervene is granted.

7. **Disqualification.** "Federal courts have the inherent power to disqualify experts, . . . although cases that grant disqualification are rare." *Koch Refining Co. v. Jennifer L. Boudreau MV*, 85 F.3d 1178, 1181 (5th Cir. 1996) (citations omitted). *See also Syngenta Seeds, Inc. v. Monsanto Co.*, 2004 WL 2223252, at *1 (D. Del. Sept. 27, 2004); *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 2012 WL 4815593, at *1 (D. Del. Oct. 10, 2012). A court derives its power to disqualify from the "duty to preserve confidence in the fairness and integrity of judicial proceedings, and to protect privileges which may be breached if an expert is permitted to switch sides in pending litigation." *Novartis AG v. Apotex Inc.*, 2011 WL 691594, at *1 (D.N.J. Jan. 24, 2011).

> In disqualification cases other than those in which the expert clearly switched sides, lower courts have rejected a "bright-line rule and have adopted the following test:
>
> First, was it objectively reasonable for the first party who claims to have retained the expert to conclude a confidential relationship existed?

4

>   Second, was any confidential or privileged information disclosed to the
>   expert?

*Koch*, 85 F.3d at 1181. Many courts have also considered a third factor, "the public interest in allowing or not allowing an expert to testify." *Id.* The party moving for disqualification bears the burden of proof with respect to each factor. *Id.*

8. I certainly recognize that Apotex is not a party to either of the above captioned cases, and that the allegedly infringing generic products being litigated in Delaware may not be identical to that being litigated in *New Jersey II*, where Merck has engaged Apotex once again in litigation regarding the '353 patent. And, to be clear, the issue is not whether Dr. Cockcroft will intentionally divulge Apotex's confidential information to Merck; I am confident Dr. Cockcroft has no intention of doing so, and that Merck has no intention of encouraging him to do so.

9. Nevertheless, there can be no dispute that the first two factors are satisfied, i.e., a confidential relationship existed between Apotex and Dr. Cockcroft, and confidential information was actually disclosed to Dr. Cockcroft. In this regard, Dr. Cockcroft was engaged as an expert witness by Apotex and, therefore, was privy (in *New Jersey I*) to Apotex's confidential information relating to whether Apotex's generic version of the drug product Nasonex® infringed the '353 patent. Although Merck and Dr. Cockcroft dispute whether that relationship still exists, certainly Dr. Cockcroft's confidentiality obligations stemming from the Apotex engagement letter and the *New Jersey I* confidentiality order remain intact.

10. Moreover, Apotex's confidential information is at a substantial risk of disclosure and/or adverse use, by virtue of the fact that Merck has chosen to pursue

5

simultaneous cases against all three generic manufacturers - Teva, Amneal, and Apotex - regarding the '353 patent. In this regard, common sense dictates that generic products (even pharmaceutical generic products) cannot be so dissimilar as to completely alleviate the natural instinct to draw upon past knowledge to solve even new problems, leading to inadvertent adverse use if not disclosure. Here, where Amneal and Apotex share the same "API" (active pharmaceutical ingredient) (D.I. 131 at 108), and where the three cases initiated by Merck all involve "an anhydrate-based formulation [of mometasone furoate] that is bioequivalent to the brand" (*id.* at 108-109), the risk of inadvertent use should not be minimized.

11. Given the nature of patent litigation today (the "no stone left unturned" mentality), common sense also dictates that Apotex's competitors (Teva and Amneal) will attempt to use the discovery process at bar to impeach Dr. Cockcroft with his past work for Apotex, where his expertise was used to demonstrate non-infringement of the '353 patent. Indeed, Amneal has specifically indicated that it intends to seek "full discovery of all information relating to [Dr. Cockcroft's] prior testimony." (D.I. 131 at 109) As a point of fact, in response to requests for production of such information, Merck has explained that it "[could not] produce it because it contains Apotex's confidential information." (*Id.*)

12. Merck's argument that Apotex's information is not relevant to the Delaware cases, therefore, is not persuasive. The crux of Dr. Cockcroft's testimony in the Delaware cases will be (as it was in *New Jersey I*): Did Dr. Cockcroft find monohydrate in the accused formulations? He did not in *New Jersey I*; we can assume that he will find it in the Delaware cases, albeit using different technology. Regardless, that change

6

in position is relevant fodder for discovery, and puts Apotex's confidential information at risk.[4] See Bone Care Int'l, LLC v. Pentech Pharm., Inc., 2009 WL 249386, at *2 (N.D. Ill. Feb. 2, 2009) (Disqualification may be "'warranted where there is a substantial relationship between the confidential information acquired and the matters to which [the expert] would be expected to testify in this action.' . . . In a patent infringement case such as this one, a 'substantial relationship' can be shown if the confidential information shared with the expert concerns the specific patent or technology at issue in the present litigation.") (citations omitted).

11. **Conclusion.** As noted in Koch,[5] the circumstances at bar do not implicate the clear-cut case of an expert "switching sides" in the same litigation. The circumstances at bar are much more complicated, due entirely to the fact that Merck choose Dr. Cockcroft - of all the experts available[6] - to offer infringement opinions regarding generic versions of the drug product Nasonex® in cases brought against Apotex's competitors. Given the realities of litigation and the substantial relationship

---

[4]The fact that this reasoning implicates the prior opinions of Merck's expert from New Jersey I is of no moment, as Merck has willingly put its confidential information into the hands of the Delaware defendants by suing them, a choice Apotex did not make.

[5]  [T]his is not a case in which the expert switched sides. If that were the case, "no one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention. This is a clear case for disqualification.

Koch, 85 F.3d at 1181.

[6]In this regard, see D.I. 131 at 107-108.

7

that exists between the Delaware cases and the New Jersey cases, I conclude that Apotex has carried its burden of proof, and that the potential for prejudice is clear. Even if Dr. Cockcroft does not technically advocate against Apotex in *New Jersey II*, his prior engagement on behalf of Apotex in *New Jersey I* will be appropriate fodder for discovery by Apotex's generic competitors, thus putting Apotex at risk not only as a litigant in *New Jersey II,* but as a participant in the generic market. In weighing the competing interests at stake - those of Merck and Dr. Cockcroft in the freedom to retain (and be retained by) whomever they please versus those of Apotex in the expected and bargained for protection of its confidential information - I conclude that the public interests clearly weigh in favor of Apotex.

United States District Judge